UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JAMES COLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:24-cv-00155-REW |
| v. ) | |
| ) | OPINION & ORDER |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff James Cole appeals the denial of his application for Disability Insurance Benefits ("DIB"). *See* DE 1 (Complaint). Cole filed a brief in support of his appeal. *See* DE 11 (Plaintiff's Brief). The Commissioner responded in opposition, seeking affirmance of the underlying decision by the Administrative Law Judge ("ALJ"), *see* DE 13 (Commissioner's Brief), and Cole replied, *see* DE 14 (Plaintiff's Reply Brief). The administrative record appears at DE 8 ("R." Administrative Transcript). The Court, having considered the pertinent record and applicable law, DENIES Cole's appeal. The Agency decision rested on substantial evidence and abided by required procedures.

I. **BACKGROUND**

Cole protectively applied for DIB in June 2022, alleging disability beginning on April 7, 2022. *See* R. at 17, 162-63. He listed asthma, hypertension, and other musculoskeletal conditions as his disabling conditions. *See* R. at 184. The Agency denied his claim initially, *see* R. at 76-79, and again on reconsideration, *See* R. at 81-83, eventually leading to an administrative hearing before ALJ Brian A. Oakes on July 24, 2023. *See* R. at 36-61. On November 3, 2023, Judge

Oakes concluded that Cole was not "disabled" within the meaning of the Social Security Act. *See* R. at 14-35. Cole requested review of Judge Oakes's decision. *See* R. at 7. The Appeals Council, finding no basis under its rules to review the ALJ decision, denied Cole's request for review, making the ALJ's decision the final agency decision. *See* R. at 1. This appeal ensued.

Judge Oakes's opinion tracked the standard five-step sequential evaluation process provided in 20 C.F.R. § 404.1520. At the first step, Judge Oakes concluded that Cole "has not been engaged in substantial gainful activity since April 7, 2022, the alleged onset date[.]" *See* R. at 19-20. At the second step, and pertinent to Cole's appeal, Judge Oakes concluded that Cole's only severe impairments were chronic obstructive pulmonary disease (COPD) and obesity. *See* R. at 20. At the third step, Judge Oakes determined that Cole did not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* R. at 20-21. As set forth in 20 C.F.R. § 404.1520(e), and germane here, because Judge Oakes found that Cole's impairments did not meet or equal a listed impairment, he assessed and determined Cole's residual functional capacity ("RFC") before reaching step four. *See* R. at 21. Judge Oakes determined Cole has the RFC to perform medium work (with certain environmental conditions) as defined in 20 C.F.R. § 404.1567(c). *See* R. at 21.

At the fourth step, Judge Oakes determined that Cole was unable to perform past relevant work, which included work as a poultry boner, fast food cook, dishwasher, and waiter. *See* R. at 28. Finally, at the fifth step, Judge Oakes determined Cole could make an adjustment to other work, which exists in significant numbers in the national economy, based on his age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2. *See* R. at 28. Judge Oakes relied on the testimony of a

2

Vocational Expert ("VE"), heard at the disability determination hearing, who testified that given all of Cole's factors, he could engage in certain work such as a hand packer, order picker, and cashier. *See* R. at 29. Based on consideration of the full record and testimony from the VE, Judge Oakes concluded that Cole was not "disabled" as defined in the Social Security Act and therefore denied the sought benefits. *See* R. at 29.

Cole then unsuccessfully sought review of Judge Oakes's decision from the Appeals Council. *See* R. at 1. The Council's denial rendered the ALJ's decision final for purposes of judicial review. Cole now seeks judicial review of the agency's determination under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's disability determination is a limited and deferential inquiry into whether substantial evidence supports the decision and whether the ALJ properly applied relevant legal standards. *See Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for social security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

A decision satisfies the substantial evidence standard when it is supported by "more than a scintilla of evidence but less than a preponderance." *See Rogers*, 486 F.3d at 241. Substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion. *See id.* In conducting the inquiry, the Court focuses on the sufficiency of the evidence supporting the ALJ's analysis; the Court does not "try the case *de novo*, resolve conflicts

in evidence, or decide questions of credibility." *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). What's more, even where substantial evidence exists to support the opposite decision, the Court will not reverse if the ALJ's decision was supported by substantial evidence. *See id.* ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). The Court must affirm the agency's factual decision, provided it is supported by substantial evidence, irrespective of the Court's own view of the merits or how it may have decided the case itself. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011).

The ALJ must also follow and correctly apply agency rules and regulations in making its determination. Failure to do so "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Remand is warranted if the failure prejudiced the claimant. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Similarly, the Court must reverse and remand if the ALJ applied incorrect legal standards. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011).

As already observed, the ALJ conducts a five-step sequential evaluation process in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). First, the ALJ determines whether the claimant is performing substantial gainful activity. *See id.* § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant's medically determinable physical or mental impairment(s) are "severe." *See id.* § 404.1520(a)(4)(ii). Third, the ALJ analyzes the medical severity of the claimant's impairments to determine whether it meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* § 404.1520(a)(4)(iii). Fourth, the ALJ assesses RFC and determines whether the claimant can still

4

do his or her past relevant work in light of the designated RFC.[1] *See id.* § 404.1520(a)(4)(iv). Fifth and finally, when the burden of production shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See id.* § 404.1520(a)(4)(v); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). The ALJ's finding at each stage of the analysis dictates the overall disability determination and whether the analysis progresses to the next step. *See Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985) (explaining that review of a claim ends upon a finding that the plaintiff is or is not disabled).

### III. ANALYSIS

The Court "limit[s] [its] consideration to the particular points that [Cole] appears to raise in h[is] brief on appeal." *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Cole advances three theories of error: (1) the ALJ erroneously found Cole's chronic lumbar pain is not a severe impairment, yielding an unfavorable RFC; (2) the ALJ failed to adequately evaluate and sufficiently explain his analysis of the opinion of Cory Ryan, M.D., resulting in an incorrectly assessed RFC; and (3) the ALJ succumbed to the error of "playing doctor," leading to an arbitrary RFC finding. *See* DE 11 at 1. The Court evaluates each issue in turn. None yields relief for Cole.

    **a)**    **Judge Oakes's determination that Cole's chronic lumbar pain is non-severe (1) is supported by substantial evidence and (2) did not taint the remaining sequential evaluation process.**

Cole's first argument is that Judge Oakes, in the second step of the sequential evaluation process, erred by finding that Cole's chronic lumbar pain is not a severe impairment. *See* DE 11 at 7. A severe impairment is one that significantly limits the claimant's ability to do basic work

---

[1] This step heeds the type of relevant work, not the exact position held previously by the claimant. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987).

activities[2] and meets the duration requirement.[3] *See* 20 C.F.R. §§ 404.1520(c). Judge Oakes found that Cole's COPD and obesity were severe impairments, but he found that Cole's chronic lumbar pain was non-severe. *See* R. at 20. Though conceding that Judge Oakes did progress to the next steps in the process, Cole asserts the step-two finding was an error that tainted the remainder of the analysis. He claims the fault yielded an RFC to perform medium work, when an RFC to perform light work would have resulted had the correct impairment classification regarding his back pain been made. *See* DE 11 at 9-10.

This argument fails for two reasons. First, Judge Oakes's conclusion of non-severity is supported by substantial evidence. Judge Oakes explained that there was no evidence that Cole's chronic lumbar back pain imposed any additional functional limitations beyond what were considered with his other impairments, themselves tabbed severe. *See* R. at 20. Judge Oakes stated that the conditions were being managed medically and did not cause any ongoing functional limitations. *See id.* (citing R. at 420, 480). Judge Oakes also noted that there was nothing in the record indicating Cole's chronic lumbar back pain necessitated more aggressive treatment after his alleged onset date. *See id.* In querying and assessing the impact of the iterated other impairments, including back pain, Judge Oakes took account of the full "longitudinal medical record," *see id.*, and rationally noted that although Dr. Ryan, for example, managed Cole's medications, the paired exams repeatedly showed normal and benign results. *See id.* at 26. The observation sampled by Judge Oakes covered a range of dates (from mid-2022 through summer-2023) and providers. Each instance included notations of normal exams, normal gait, full range of motion, and, *e.g.*, a telling negative notation for back pain or injury from March 2023. *See id.* at 25 (citing R. at 420). Judge

---

[2] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *See* 20 C.F.R. § 404.1522(b)(1).
[3] To meet the duration requirement, the non-terminal impairment must have lasted or must be expected to last for a continuous period of at least 12 months. *See* 20 C.F.R. § 404.1509.

6

Oakes quite reasonably determined that whatever supported the lengthy prn prescriptions, Cole's record did not present evidence of additional functional limits beyond those attendant to the recognized severe impairments. As such, back pain, in this instance, was of minimal effect and did not qualify as a severe impairment. Substantial evidence supports Judge Oakes's conclusion.

Second, and also fatal to Cole's argument, Cole failed to show that, even if Judge Oakes erroneously classified the impairment as non-severe, any error was prejudicial. The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in determining RFC. *See* SSR 96-8p, 1996 WL 374184 at *5. Indeed, while an impairment may not be "severe" considered in isolation, it may, when considered in conjunction with other impairments, "be critical to the outcome of a claim." *See id.* "Thus, so long as the ALJ considers both severe and non-severe impairments in later steps, the finding of non-severity at step two becomes harmless and 'legally irrelevant.'" *Trent v. Saul*, No. 7:19-CV-109-CHB, 2021 WL 185233, at *3 (E.D. Ky. Jan. 19, 2021) (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020)). Judge Oakes expressly folded his full analysis into the balance of the steps, considering all impairments along the way. *See* R. at 20.

In support of his contention that Judge Oakes's error at step two was harmful, Cole cites *Sullivan v. Comm'r of Soc. Sec.*, No. 18-5523, 2018 WL 8344632, at *2 (6th Cir. Dec. 17, 2018). There, the ALJ denied Sullivan's supplemental security income benefits ("SSI"), finding that she did not have a severe impairment and therefore ending the analysis at step two, and a magistrate judge affirmed the denial. *Sullivan*, 2018 WL 834632, at *1. On appeal, the Sixth Circuit vacated the district court's judgment and remanded for further proceedings. *See id.*, at *3. However, the Court's basis for vacatur and remand was the ALJ's failure to give proper (or any) weight to Sullivan's treating physician's opinion in determining severity at step two. *See id.* Attempting to

7

draw a comparison to the instant case, Cole states that "the ALJ's error in the case at bar has likewise affected the following steps and has significantly prejudiced this claim." *See* DE 11 at 10. The Court disagrees and rejects *Sullivan*'s applicability. Importantly, the procedural sequence of *Sullivan*, which involved a denial of benefits at stage two, is materially distinguishable from Cole's case, which progressed to the remaining steps of the sequential process. *See* R. at 20-27.[4]

There is only harmful error, as Cole alleges, if Judge Oakes did not consider Cole's chronic lumbar back pain in the remaining steps, specifically at the RFC determination stage. *See Maziarz v. Sec'y of Health & Human Servs.*, 837, F.2d 240, 244 (6th Cir. 1987) (finding that failure to deem an impairment severe is not reversible error if the claimant has another impairment deemed severe and the ALJ considers all impairments in determining RFC). The Court finds that Judge Oakes properly considered Cole's chronic lumbar back pain in determining his RFC. Any error in classification at step two was harmless procedurally. On the merits, whether the RFC itself was proper, the assessment mostly boils down to the rectitude of Judge Oakes's handling of Dr. Ryan's conclusory opinion, which the Court addresses in the next part of this Order.

    b)    **Judge Oakes satisfied the requirements of 20 C.F.R. § 404.1520c(b)(2).**

Because Cole filed his DIB claim in 2022, the newer rules for evaluating medical opinions apply. *See* 20 C.F.R. § 404.1520c. This regulation contains an analysis requirement, *see* § 404.1520c(a), and an articulation requirement, *see* § 404.1520c(b). For the analysis portion, medical opinions and prior administrative medical findings are not given de jure deference or any specific evidentiary weight. *See id.* at § 404.1520c(a). Instead, the ALJ must consider certain regulatory factors listed in 20 C.F.R. § 404.1520c(c)(1)-(5) in weighing the persuasiveness of a medical opinion, with supportability ((c)(1)) and consistency ((c)(2)) being the most important.

---

[4] Given what the VE said about light work and past work, it seems a light work finding would also have ended the analysis. *See* R. at 58 (noting that prior work would have persisted on a light work restriction).

8

*See id.* Regarding articulation, the ALJ must explain how he considered the supportability and consistency factors in determining opinion persuasiveness and may explain his consideration of the other factors, if appropriate. *See id.* at § 404.1520c(b)(2). The supportability factor concerns the relevance of the objective medical evidence and supporting explanations presented by a medical source to support the medical source's medical opinion—the more relevant the evidence or explanation, the more persuasive the opinion or prior administrative medical finding. *See id.* at § 404.1520c(c)(1). The consistency factor provides that the more consistent a medical opinion is with evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion or prior administrative medical finding will be. *See id.* at § 404.1520c(c)(2).

Dr. Ryan completed a check-box medical opinion on May 23, 2023, finding that Cole could perform only sedentary work. *See* R. at 469. Dr. Ryan did not detail his functional analysis but rather checked regulatory cross-references. *See id.* He eschewed the chance to "identify the particular medical or clinical findings . . . which support [the] assessment" and rather stated that he based the opinion on non-specific "medical history, clinical and laboratory findings, diagnosis, prescribed treatment, side effects of medications, response to treatment," etc. *See id.* Judge Oakes quite reasonably found the opinion unpersuasive. *See* R. at 26.

Cole argues Judge Oakes failed to adequately evaluate and sufficiently articulate his analysis of Dr. Ryan's opinion, resulting in an RFC not supported by substantial evidence. *See* DE 11 at 11. Cole acknowledges that Judge Oakes sufficiently addressed the supportability factor, but he contends error occurred on the consistency prong, noting lack of identified contradiction between the treatment notes and diagnoses of Dr. Ryan and those of Drs. Johnson, Ahmed, London-Bounds, Farmer, and Booth. *See* DE 11 at 12. Judge Oakes's supportability analysis properly accounted for the objective medical evidence, including Dr. Ryan's contemporaneous

9

treatment and examination notes, and Dr. Ryan's supporting explanations (or lack thereof). *See* R. at 26-27.

In the Court's view, Judge Oakes also gave a proper basis for his view on consistency. The Court reads the decision as a whole, accounting for the ALJ's complete and integrated analysis. The decision included a painstaking recitation of the medical record, covering in detail each provider across the longitudinal history. *See id.* at 21-27. The decision reflected the hearing content, relaying Cole's own sworn portrayal of his limits and work ability. *See id.* at 21-22. The decision compared what both Dr. Ryan and Cole said with the balance of the medical reports, expert input, and point-by-point instances of observed conduct and medical interactions over the course of several years. *See id.* at 22-27. The rich detail provides a complete basis by which the Court can review the propriety of Judge Oakes's full analysis under § 404.1520c.

The Court agrees that Judge Oakes mis-cited an MRI as an x-ray, though all under the imaging rubric. *See id.* at 23. However, he fully accounted for the results of the study along with other contemporaneous imaging, showing full familiarity the objective testing from April 2021. He also repeatedly noted that a diagnosis is not the same as a disabling limitation, so he scoured the record for what the history showed about Cole's actual limitations.

Was his focus Dr. Ryan? It was, but that was proper given that Dr. Ryan alone provided limitations that would have taken Cole below the medium work thresholds. Dr. Ryan's sole expression of limits came from the check-box form, which offered no details, reasoning, or cross-references to specific support. Rather, Dr. Ryan simply cast toward his prior records and exams of Cole. Against this, Judge Oakes mined for supportability and came up quite empty. As he detailed, Dr. Ryan's sharp limitations found scant support in a record replete with reports that merely showed Dr. Ryan repeatedly filling prescriptions but making no findings indicative of

10

actual limitations. *See id.* at 26-27. By way of example, Judge Oakes noted: Cole came to Dr. Ryan in 4/22 to establish a care relationship, having not seen a doctor in "almost a year." *See id.* at 23 (citing R.R. at 325. At that appointment, Cole showed normal gait and full range of motion. *See id.* (citing R. at 326). Over the course of the next year plus, Dr. Ryan saw Cole and kept his prn hydrocodone prescription in place, but the visits typically involved just a cited history of back pain but visit-specific results that were normal or benign. *See, e.g.*, *id.* at 321-23 (May 2022: denial of muscle aches, limping gait, patient "comfortable" and in no "acute distress" along with full extremity ROM and normal gait); *Id.* at 318-20 (June 2022: same and "doing well" and medications assist with "activities of daily living"); *Id.* at 314-17 (July 2022: same, with distinct reference to "rib pain"); *Id.* at 315 (August 2022: same, with reference to all review of systems "negative" except need for sought inhaler). In February 2023, a visit reported negative problems on systems review except for "right ankle pain." *See id.* at 456-57 (again, reporting normal on ROM and gait). Even the May 2023 visit (close in time to the check-box report) lacked supportability. *See id.* at 482-83 (again reporting broad exam normalcy, citing to new sebaceous cyst). A like story appeared in the June 2023 visit. *See id.* at 480-81 (showing no general exam but referencing patient as "doing well" and the only exception to "doing well" was a boil on patient's back).

Judge Oakes's assessment of consistency was adequate, both to confront the merits of Dr. Ryan's opinion and to permit sufficient review by this Court. Though the Sixth Circuit has not established a specific standard to determine whether an ALJ sufficiently complied with the articulation and analysis requirement, district courts within this circuit "consistently apply the articulation requirement literally." *See Peters v. O'Malley*, No. 6:24-CV-11-REW, 2024 WL 5077599, at *3 (E.D. Ky. Dec. 10, 2024). Under this approach, the ALJ must "provide a coherent

11

explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors." *See id.* (citing *Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *4 (E.D. Tenn. Mar. 21, 2023)). True enough, that in the specific section addressing Dr. Ryan, Judge Oakes cited only one entry from Cole's consultation at UK. *See* R. at 27 (citing to R. at 500 and cardiothoracic consult, which included no flank pain, no numbness, no tingling or muscle weakness and revealed only rib tenderness). However, that paragraph followed Judge Oakes's granular audit of Cole's full medical course, which included details of all imaging, the already discussed visit-by-visit story of Cole and Dr. Ryan, and the full review of Cole's UK and Wayne County hospital interactions. The UK interactions included a July 2022 consult, which reported rib pain but also, notably, a review of systems providing "negative for back pain." *See id.* at 517. The Wayne County visit reported, expressly, "negative" for back "injury and pain." *See id.* at 420. And Judge Oakes plainly acknowledged and discussed the imaging results, referencing the diagnoses from the reviewing physicians. Nothing, however, ties those results to functional limitations, which is the key lacuna in Cole's argument. And as to the relationship between Cole's claimed back pain and his work abilities, Judge Oakes noted the quite episodic nature of the pain, which Cole under oath described as, "I do have pain in my back *every once in a while*." *See id.* at 43 (emphasis added). This maps the enduring prn nature of his medication management (which seems to be the lone treatment modality employed). Cole later tied his problems to his ribs being "cracked" saying, "And my ribs, they intertwine and they pop, and that there is what makes my back hurt." *See id.* at 48. This theory, rib fractures and no degenerative changes in his spine, is what Cole testified to before the ALJ.

By mapping out the deficits in supportability and the deficits in consistency, Judge Oakes fully met the articulation standard in 1520c. As such, this argument fails.[5]

### c) Judge Oakes did not overstep his mandate and "succumb to the temptation to play doctor."

It is the job of the ALJ to review the medical evidence and claimant's testimony and decide his RFC. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Cole, however, argues that Judge Oakes impermissibly "succumbed to the temptation to play doctor" by substituting his interpretation of the medical records for those of the physicians, resulting in an RFC unsupported by the record. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009); *Gibbons v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 246 (6th Cir. 2016). More specifically, Cole argues that there is insufficient evidence in the record to make an informed RFC determination and that remand is warranted where the ALJ draws medical conclusions without relying on medical opinion evidence. *See* DE 11 at 15.

The Court declines to accept this argument in the instant case. The Sixth Circuit has unambiguously held that there is no "bright-line rule" directing an ALJ's RFC finding to correspond to a particular opinion. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). Indeed, the RFC determination need not be consistent with or matched to a physician's opinion so long as it is still supported by substantial evidence. *See Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Here, Judge Oakes found that Cole has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except he can have frequent

---

[5] It is notable to the Court that, other than short-term restrictions imposed by Dr. Roberts back in 2021, no physician or provider seems to have limited Cole in any way. And while Dr. Roberts's orders produced the x-ray and MRI images Cole frequently cites, no physician seems to have commented on or linked those studies to observed limitations in Cole's functioning. As the Commissioner notes, a diagnosis is not itself disabling. Indeed, in the year after Cole had those studies, he seems to have chosen to go without care, returning only to initiate a care relationship with Dr. Ryan in 2022. This was all limned in Judge Oakes's review and sharply erodes the link between the studies and what Cole now describes as significant functional limitations. And if the consistency aspect of Judge Oakes's decision is comparatively thin, that is because the field of comparative proof also is thin. Judge Oakes can only assess what the record presents.

exposure to dust, orders, or fumes. *See* R. at 21. This finding was followed by an extensive analysis on the issue, relying on an exhaustive critique of Cole's own statements and reporting (themselves far beyond even Ryan's views), the treatment notes, examinations, and diagnostic testing and imaging. *See* R. at 27-28. Indeed, the Court sees naught in the record to contradict or undercut the thoughtful formulation of the ALJ. Accordingly, the Court denies this claim of error.

### IV.     Conclusion

For the reasons stated above, the Court rejects Cole's appeal and upholds the Agency's decision.

This the 22nd day of January, 2026.

Signed By:
*Robert E. Wier*    REW
United States District Judge